JOINER, Judge.
Lamiquel C. Traylor appeals his convictions for manslaughter and felony murder. On January 19, 2010, Traylor was indicted by a Mobile County grand jury in a two-count indictment charging one count of intentional murder for the killing of David Turner, see § 13A-6-2(a)(1), Ala.Code 1975, and one count of felony murder for the killing of David Turner, see § 13A-6-2(a)(3), Ala.Code 1975; Traylor was convicted of manslaughter as a lesser-included offense to the offense charged in count I of the indictment and of felony murder under count II. On May 25, 2011, the circuit court sentenced Traylor to 20 years’ imprisonment on the manslaughter conviction and to 30 years’ imprisonment on the felony-murder conviction and ordered that the sentences run concurrently. The circuit court also ordered Traylor to pay restitution in the amount of $7,845. On June 14, 2011, Traylor filed a notice of appeal.
At trial, the State’s evidence established that on June 4, 2009, Lebarron Turner discovered the body of his brother, David “Bird” Turner, lying dead on the ground outside David’s house in Mobile County. An autopsy revealed that David died as the result of a .38-caliber gunshot wound to the chest and a shotgun wound to the torso and extremities; David also had bruises and lacerations to his face and lips and “fractures of his teeth.” (R. 220.) Approximately $100 and one pound of marijuana had been stolen from David’s house.
Lebarron testified that at approximately midnight on the morning of June 4, 2009, he returned to the house he shared with David to find that it was “tore up” as if someone had broken into the house. (R. 107.) Lebarron claimed that he called his friends, Ralph Houston and Angelo Quin-de, and asked them to come over to his house; Lebarron’s two cousins also came to the house. Lebarron claimed that he attempted to telephone David, whom Le-barron had seen earlier riding around with friends drinking alcohol and cough syrup with codeine, but David’s cellular telephone was found inside the house. Lebar-ron testified that at some point he walked outside to check around the house and discovered David’s lifeless body beneath a broken window on the side of the house. Lebarron stated that he moved David’s body into the house and noticed that David had one gunshot wound to the chest and that his face appeared swollen and his lip was busted. Lebarron stated that he thereafter became upset, and he said that he discharged a revolver inside the house before leaving the house for several hours.
Maurice Coleman, a friend of David’s, testified that Ralph Houston and “Funky Daddy” told him that something had happened to David.[1] Coleman stated that when he arrived at Lebarron’s house, David’s body was lying on the ground at the side of the house. Coleman claimed that Lebarron and his friends decided to move David’s body inside the house because it started raining. Once David’s body was moved inside the house, Coleman testified that he noticed David’s face was *1011 swollen and that David had multiple bullet holes in his chest and side. Coleman recalled that at some point while inside the house, Lebarron discharged his weapon.
Ralph Houston testified that Lebarron telephoned him to ask if he would come over to Lebarron’s house because Lebar-ron believed someone had broken into it; Houston testified that the house had been broken into several times in the past. Houston stated that sometime after he arrived at Lebarron’s house, David was found lying dead on the ground at the side of the house. Houston claimed that David had on black pants but that he was not wearing a shirt. Houston testified that he noticed that David had a bullet hole to the chest and buckshot in his torso and that his nose was bleeding like “he had been fighting or something, like they beat him up or something.” (R. 154.) Houston further testified that Lebarron fired his revolver in the house.
Officer Josh Evans, a member of the City of Mobile Police Department, testified that while on patrol on the night of the murder, he responded to a call concerning a shooting victim and shots fired. Officer Evans stated that after arriving at the scene, he entered the residence and saw several people standing around David’s body, which was lying face up with a gunshot wound to the side and chest. Officer Evans also claimed that a shell casing along with several bullet holes in the wall were found inside David’s bedroom. At some point, Officer Evans testified that he called for backup because of the chaotic state of the murder scene.
Corporal Rodney Greenley, a member of the Mobile Police Department, testified that he collected a fired nine-millimeter cartridge case in David’s bedroom. Corporal Greenley stated that he also collected a headboard with birdshot markings located in David’s bedroom beneath a broken window. Corporal Greenley claimed that he recovered a “shot shell piston” from the box springs located in David’s bedroom. Corporal Greenley further testified that he recovered a gold tooth from the living room of David’s house. Although multiple fingerprints were lifted from David’s house, Corporal Greenley stated that none were identifiable.
In a statement to the authorities, Rash-eeda Green, Traylor’s girlfriend at the time, said that Traylor came to her house the night after the murder and told her that he had murdered David. Green also claimed that Traylor said that he found David asleep in the house and that a man named “Little Nuk” hit David in the face with a pistol. Green stated that Traylor said that he shot and killed David just as David was about to jump out of a nearby window. Further, Green testified that Traylor said that he took marijuana and money from David’s house.
Latressa Boulware, Traylor’s former girlfriend, testified that she overheard Traylor say that he went “on a lick” to David’s house.[2] Boulware also claimed that she overheard Traylor say that David got shot and that David jumped out of a window.
Derrick Robinson testified that Traylor, Jason Parnell, and Willie Crier picked Robinson up on June 3, 2009, after having made a plan to rob David’s house; Robinson stated that he and Traylor had, on prior occasions, burglarized David’s house. Robinson stated that while at David’s house, he broke a window to gain entrance into the house and found David asleep on the couch. Robinson testified that Jason Parnell woke David by hitting David in the face with a pistol; Robinson also stated *1012 that Traylor hit David. Robinson further stated that as David attempted to escape by jumping out of a window, Traylor shot David once with a nine-millimeter handgun and twice with a .410-gauge shotgun.
Following the circuit court’s denial of Traylor’s motion for a judgment of acquittal, both the State and Traylor presented closing arguments. The circuit court charged the jury, and the jury found Tray-lor guilty of manslaughter and felony murder. This appeal followed.
On appeal, Traylor makes three arguments: (1) that Derrick Robinson’s accomplice testimony was not sufficiently corroborated by other evidence; (2) that Traylor’s uncorroborated confession was not sufficient to support his convictions; and (3) that the State’s evidence was insufficient to establish a prima facie case.
At the outset, we note that Tray-lor’s two convictions for both felony murder and the lesser-included offense of manslaughter presents a potential double-jeopardy violation. See Heard v. State, 999 So.2d 992, 1006 (Ala.2007). This Court has held that such an issue is a jurisdictional defect that this Court has a duty to notice. See Strickland v. State, 92 So.3d 179, 182 (Ala.Crim.App.2011) (citing Brooks v. State, 76 So.3d 275, 285 (Ala.Crim.App.2011)). Therefore, we address this issue on appeal despite the fact that it was not properly presented in the circuit court or in this Court.
In Rolling v. State, 673 So.2d 812, 813 (Ala.Crim.App.1995), Rolling’s two-count indictment charged Rolling with both the felony murder and intentional murder of one victim.[3] After trial, the jury returned convictions for felony murder and for the lesser-included offense of reckless manslaughter. In analyzing this issue, this Court stated:
“Reckless manslaughter is a lesser included offense of felony murder; it requires no proof independent of that necessary to establish felony murder. See § 13A-1-9(a)(1)(‘An offense is an included one if ... [i]t is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged’). See also Vinson v. State, 601 So.2d 196 (Ala.Crim.App.1992) (it would be impossible to commit the greater offense without committing the lesser included offense).”
Rolling, 673 So.2d at 814.
Furthermore, this Court has held:
“Coral v. State, 628 So.2d 954, 958 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994), illustrates the application of the lesser included offense analysis to a double jeopardy claim:
“ ‘The appellant contends that he was twice put in jeopardy for the same offense because he was convicted of the lesser included offense of murder under Count I, which alleged the capital offense of murder-robbery, and he was also convicted of the capital offense of murder-burglary under Count II. It is clear that these two offenses arose out of the same conduct and that his murder conviction constitutes a conviction for the same murder that was an element of the capital offense of murder-burglary for which he was also convicted. While the appellant was in fact sentenced only for the greater offense, his murder conviction under Count I cannot stand. *1013 Section § 13A-1-8(b) provides, in part, as follows:
“ ‘ “When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
“ ‘ “(1) One offense is included in the other, as defined in section § 13A-1-9.... ”
‘“Clearly, under § 13A-1-9, murder is included in the capital offense of murder-burglary.... Accordingly, this cause is remanded for the trial court to vacate the appellant’s conviction for murder under Count I of the indictment. However, the appellant’s conviction for the capital offense of murder-burglary was proper in this regard and thus it stands.’
“See also Crear v. State, 591 So.2d 530 (Ala.Crim.App.1991) (under § 13A-1-8(b)(1), the defendant was erroneously convicted of both resisting arrest and assault where they arose out of the same incident and, under the facts, resisting arrest was a lesser included offense of assault); Pardue v. State, 571 So.2d 320, 329-30 (Ala.Crim.App.1989), rev’d on other grounds, 571 So.2d 333 (Ala.1990) (under § 13A-1-8(b)(1), the defendant was erroneously convicted of both first and second degree theft of property where the convictions were based on a single theft of the same property stolen from the same victim in the same burglary). Compare McKinney v. State, 511 So.2d 220, 225 (Ala.1987) (‘a single criminal act that causes injury to more than one person may constitute more than one offense and may support more than one prosecution and conviction’).
“Based on the above discussion, the trial court’s judgment finding Rolling guilty of both crimes was error. We hold that, particularly pursuant to § 13A-1-8(b)(1), the court was without jurisdiction to adjudge Rolling guilty of manslaughter.”
Rolling v. State, 673 So.2d 812, 814-15 (Ala.Crim.App.1995) (footnote omitted).
In the present case, Traylor’s convictions for manslaughter and felony murder are based on the murder of a single victim. Under the principles stated in Rolling, manslaughter is a lesser-inelud-ed offense of felony murder because manslaughter requires no additional proof other than that necessary to establish the commission of felony murder. Thus, Tray-lor was subjected to double jeopardy by being twice convicted for the same offense. Therefore, we remand this case to the circuit court with instructions that the court vacate one of Traylor’s convictions and the accompanying sentence. Due return shall be made to this Court within 28 days of this decision.
Because this case must be remanded to the circuit court for further proceedings, we pretermit discussion of Traylor’s remaining claims until return is made to this Court.
REMANDED WITH INSTRUCTIONS.*
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. Maurice Coleman testified that "Funky Daddy” was his friend but that he did not know his real name.

. Boulware testified that the phrase "on a lick” means "to rob someone.”

. We note that although Rolling concerns a petition for postconviction relief under Rule 32, Ala. R.Crim. P., and is thus procedurally different than the instant appeal, the law concerning lesser-included offenses is still applicable.

 Note from the reporter of decisions: On April 13, 2012, on return to remand, the Court of Criminal Appeals affirmed, without opinion.