JOINER, Judge.
Rashad Stoves was convicted of one count of reckless manslaughter, see § 13A-6-3, Ala. Code 1975,[1] and five counts of felony murder, see § 13A-6-2, Ala. Code 1975.[2] For the manslaughter conviction, Stoves was sentenced to 20 years' imprisonment and was ordered to pay court costs. For each felony-murder conviction, Stoves was sentenced to life imprisonment and was ordered to pay a $100 crime-victims-compensation assessment and court costs. All sentences were to be served concurrently.
The State's evidence at trial tended to show that, in the early morning hours of January 29, 2012, Stoves, Artavius Underwood, and Reginald Mims shot and killed Ronnie Render, Charles Render, Jeffrey Davis, Jonathan Sanchez, and Demetrius Sanford during the commission of a robbery at a house located on Avenue S in Ensley.
Rayford Williams testified that, in the late evening of January 28, 2012, he and Akechia Harris went to M & N Grocery Store on 24th Street South. As they left the store, Underwood-whom Williams referred to as "Poo Poo"-and two other young males-later identified as Stoves and Mims-asked Williams for a ride. The three young men got into the backseat of *684 Williams's two-door Chevrolet Cobalt automobile; Underwood sat behind Williams; Stoves sat in the middle; and Mims sat behind Harris, who sat in the front passenger's seat. Stoves directed Williams to drive toward Ensley, and, as Williams drove, Williams and Underwood compared their firearms. Williams had a 9-millimeter Smith & Wesson and Underwood had a pistol with an extended clip. Williams stopped near the 2700 Block of Avenue S near Minor Elementary School; Williams opened his door and leaned his seat forward, and Underwood exited the car. Williams testified: "After I let Poo Poo out the car, once I get ready to lean my seat back, Stoves had a pistol on me." Stoves pointed the pistol that Underwood had shown Williams earlier at Williams and said, "Give it up." Williams gave Stoves his cash, drugs, the Smith & Wesson pistol, and the holster. Stoves hit Williams in the head twice with the pistol, and Williams grabbed the pistol; Williams told Stoves he got what he wanted and to get out of the car. Mims, who was standing outside on the passenger's side, fired a revolver into the car. Williams described Mims's revolver as possibly a .38 caliber and "dusty looking."
Antarius Render testified that, on January 28, 2012, he was living on Avenue S in Ensley. Orlando Scott testified that he had been at Antarius's house for the majority of that day. Between midnight and 1 a.m. on January 29, Antarius, Scott, and Sanford left in Sanford's Crown Victoria automobile and went to the Downtown Lounge, a nightclub. When they returned to Antarius's house around 3 a.m., Sanford backed his car into the driveway, and the men sat inside the vehicle for a few minutes. Scott noticed that all the lights in the house were turned on and that the front door was open. Antarius testified:
"Lights was on, so I get out of the car and I hear noises, like stuff just flipping over and-but I ain't pay no mind, just going in to see what was going on. And I get halfway in the door, and a gun was pointed up to the side of my face."
(R. 1191). Antarius stated that the room had been trashed, and the bed had been moved to the other side of the room. Antarius testified that Stoves was the person holding the gun and that Antarius recognized the gun to be a "Ruger nine with an extended clip." Antarius leaned back, slammed the screen door, and ran out of the house. As he ran, Antarius attempted to tell Sanford and Scott to get out of the car, but he fell against Sanford's car and dropped his hat and cellular telephone in the yard. Antarius saw three people coming out of the house; he saw Stoves approach the driver's side of Sanford's car while a second person approached the passenger's side. Antarius continued running to the Kangaroo store, a local convenience store, where he reported a robbery in progress at his address.
Officer Ronald Brown, Jr., of the Birmingham Police Department ("BPD") was on patrol around 3:20 a.m. on January 29, 2012, when he stopped at the Kangaroo convenience store on the 2200 block of Bessemer Road. Officer Brown went inside, and shortly thereafter Antarius entered the store. Officer Brown testified that Antarius seemed "winded" and that "his pants were wet and he was bleeding from his hand." Officer Brown asked Antarius what was going on, and Antarius replied that someone was robbing his house. Officer Brown reported a possible robbery in progress at Antarius's address and transported Antarius to BPD headquarters for questioning.
Orlando Scott testified that, at around 1 p.m. on January 28, 2012, he saw Stoves, Mims, and Underwood in Midfield and that he saw Charles Render speak to them.
*685 Scott testified that he, Antarius, and Sanford went to a club around midnight on January 29, 2012, and returned to Antarius's house around 3 a.m. Scott, who was in the rear seat on the passenger's side, and Sanford, who was in the driver's seat, remained in the car while Antarius walked up to the house. Shortly thereafter, Antarius ran out, hit the car, and yelled at Scott and Sanford to "[g]et out of the car!" Scott saw one person chase Antarius down the street as two other people approached Sanford's car. Scott recognized Mims as the person who approached the passenger's side because he had seen him earlier that day. Mims was holding a gun, wearing a skull cap, and attempting to cover his face with a T-shirt. Mims pulled Scott out of the car, hit him with a gun, and told him to lie face down on the ground. Scott identified Stoves as the person who approached the driver's side; Stoves was carrying a 9-millimeter pistol with an extended clip and had Sanford on the floor inside the front doorway of the house. Sanford reassured Scott that he would "handle it," and Stoves told Sanford to "give it up." Scott then heard a gunshot, and Mims told Scott to keep his head down. Scott then saw a third person run up to the house and heard someone ask "what he shot him with." Stoves, Mims, and the third person then fled in Sanford's car. Scott got up and began running in the direction of his house and stopped at a neighbor's house. Scott told his neighbor he had been robbed, and his neighbor telephoned emergency 911. Two police officers arrived and transported Scott to BPD headquarters. Scott testified that a wallet, rings, earrings, money, car keys, and a cellular telephone were taken from him.
Officer Rashad Campbell and Officer Rogie McCombs of the BPD responded to the robbery on January 29, 2012. Officers Campbell and McCombs were the first officers to arrive; Officer Campbell pushed the front door of the house open and saw Sanford slumped over a bed with a gunshot wound to his head. Officer Campbell testified that the room had been "ransacked," "tore up pretty bad," and that "drawers [were] pulled out" and "clothes w[ere] all over the place." After two additional officers arrived, the four officers cleared the rest of the house. In a back bedroom, the officers discovered Charles, Ronnie, Davis, and Sanchez, who "appeared to be deceased." Officer Campbell testified that the back bedroom had also been ransacked.
Officers Campbell and McCombs then left the house on Avenue S because they got a call about a possible witness to the robbery-later identified as Scott-who was banging on the front door of a residence on the 1800 block of 47th Street in Ensley. Officer Campbell testified that, when he and Officer McCombs arrived, Scott "came off the front porch with white jeans on, no shoes, wet, and scared." Officer Campbell opened the back door of his patrol car, and Scott dove in. Scott told the officers that he had been robbed and that somebody had tried to kill him. Officers Campbell and McCombs transported Scott to BPD headquarters. As a result of interviews with Scott and Antarius, police developed Stoves-and later Mims and Underwood-as a suspect in the robbery and murders.
Officer Christopher Finch, an evidence technician with the BPD Crime Scene Unit, responded to the house on Avenue S around 4:10 a.m. on January 29, 2012. Officer Finch observed Sanford in the front bedroom with a gunshot wound to his head and observed Charles, Ronnie, Davis, and Sanchez in a back bedroom, all of whom had been shot. Officer Finch testified that there was "a lot of blood" in the back bedroom and a hole in the closet that appeared to have been caused by a bullet.
*686 Officer Finch collected shell casings, cartridges, and projectile fragments from the front bedroom, the back bedroom, the hallway, and the front yard. Specifically, Officer Finch testified that some of the spent bullets he collected were 9-millimeter Luger brand shell casings. Officer Finch also received several projectiles from the coroner that were recovered from the autopsies of Charles, Ronnie, Davis, and Sanchez. Officer Finch later discovered Sanford's vehicle, which had been "burned from front to back."
Detective Jeffrey Steele of the BPD responded to the house on Avenue S at 3:50 a.m. on January 29, 2012. Detective Steele testified that the following items taken from the house were later recovered elsewhere: (1) an H & R Block tax-service business card belonging to Ronnie was found at a convenience store in Bessemer located two blocks from Mims's house; (2) Scott's cellular telephone was found on the roof of the same convenience store; and (3) Charles's wallet was found in the parking lot of a McDonald's fast-food restaurant. Detective Steele testified that a search warrant was executed at a house on South Street in Dolomite; approximately $1,500 in cash and a cellular telephone were discovered as a result of the search. Stoves was apprehended at that address at 6 p.m. on January 29, 2012. Stoves gave a statement to police admitting that he, Mims, and Underwood were at the house on Avenue S in the early morning hours, but Stoves denied committing the crimes. Stoves stated that he had left the scene in a vehicle that, Detective Steele testified, was Sanford's car that was later found burned.
Mitch Rector of the BPD testified as an expert in the field of firearm and toolmark examination. Rector analyzed the bullets recovered from the scene and from the victims' autopsies. Rector testified that the bullets were fired from three different types of guns. The first type of gun was a Smith & Wesson brand 9-millimeter; the second type of gun could have been an American Eagle, Beretta, Browning, CZ, Colt, Cobray, Heckler & Coke, High Point, Kill Tech, Mauser, Norenko, Ruger, Springfield, SWD, Tangfolio, Wather, or Estada brand; the third type of gun was either a Charter Arms, RG, or Rome brand.
Dr. Gary Simmons testified as an expert in the field of forensic pathology. Dr. Simmons performed the autopsies of Charles, Ronnie, Sanford, Davis, and Sanchez on January 30, 2012. Each victim suffered at least one gunshot wound to the head or face; Dr. Simmons testified that each victim died as a result of their gunshot wounds.
After the State rested, Stoves moved for a judgment of acquittal on the ground that the State's evidence was insufficient "to support a finding that [he] is guilty beyond a reasonable doubt." Specifically, Stoves argued that the State failed to show the element of intent. The circuit court denied Stoves's motion. Stoves was ultimately convicted of one count of reckless manslaughter and five counts of felony murder. Stoves filed a motion for a new trial arguing, among other issues, that the "evidence presented at trial was insufficient to find [him] guilty beyond a reasonable doubt." The circuit court denied his motion.
On appeal, Stoves raises several issues. We address each in turn.
I.
Stoves contends that his manslaughter conviction must be vacated because, he says: (1) "the offense for which he has been convicted-the manslaughter of more than one person-is a non-existent offense" (Stoves's brief, p. 11); and (2) his "convictions for manslaughter and felony *687 murder violate double jeopardy principles." (Stoves's brief, p. 13.) The State "concedes that Stoves's manslaughter conviction should be vacated because it violates the Double Jeopardy Clause" and asks this Court to remand this case for the circuit court to vacate Stoves's manslaughter conviction. (State's brief, p. 16.)
This Court addressed a similar issue in Traylor v. State, 93 So.3d 1009 (Ala. Crim. App. 2012) :
"In Rolling v. State, 673 So.2d 812, 813 (Ala. Crim. App. 1995), Rolling's two-count indictment charged Rolling with both the felony murder and intentional murder of one victim. After trial, the jury returned convictions for felony murder and for the lesser-included offense of reckless manslaughter. In analyzing this issue, this Court stated:
" 'Reckless manslaughter is a lesser included offense of felony murder; it requires no proof independent of that necessary to establish felony murder. See § 13A-1-9(a)(1)("An offense is an included one if ... [i]t is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged"). See also Vinson v. State, 601 So.2d 196 (Ala. Crim. App. 1992) (it would be impossible to commit the greater offense without committing the lesser included offense).'
"Furthermore, this Court has held:
" ' Coral v. State, 628 So.2d 954, 958 (Ala. Crim. App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994), illustrates the application of the lesser included offense analysis to a double jeopardy claim:
" ' "The appellant contends that he was twice put in jeopardy for the same offense because he was convicted of the lesser included offense of murder under Count 1, which alleged the capital offense of murder-robbery, and he was also convicted of the capital offense of murder-burglary under Count II. It is clear that these two offenses arose out of the same conduct and that his murder conviction constitutes a conviction for the same murder that was an element of the capital offense of murder-burglary for which he was also convicted. While the appellant was in fact sentenced only for the greater offense, his murder conviction under Count 1 cannot stand. Section § 13A-1-8(b) provides, in part, as follows:
" ' " 'When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
" ' " '(1) One offense is included in the other, as defined in section § 13A-1-9 ....'
" ' "Clearly, under § 13A-1-9, murder is included in the capital offense of murder-burglary .... Accordingly, the cause is remanded for the trial court to vacate the appellant's conviction for murder under Count I of the indictment. However, the appellant's conviction for the capital offense of murder-burglary was proper in this regard and thus it stands."
" 'See also Crear v. State, 591 So.2d 530 (Ala. Crim. App. 1991) (under § 13A-1-8(b)(1), the defendant was erroneously convicted of both resisting arrest and assault where they arose out of the same incident and, under the facts, resisting arrest was a lesser included offense of assault);
*688 Pardue v. State, 571 So.2d 320, 329-30 (Ala. Crim. App. 1989), rev'd on other grounds, 571 So.2d 333 (Ala. 1990) (under § 13A-1-8(b)(1), the defendant was erroneously convicted of both first and second degree theft of property where the convictions were based on a single theft of the same property stolen from the same victim in the same burglary). Compare McKinney v. State, 511 So.2d 220, 225 (Ala. 1987) ("a single criminal act that causes injury to more than one person may constitute more than one offense and may support more than one prosecution conviction").'
" 'Based on the above discussion, the trial court's judgment finding Rolling guilty of both crimes was error. We hold that, particularly pursuant to § 13A-1-8(b)(1), the court was without jurisdiction to adjudge Rolling guilty of manslaughter.'
" Rolling v. State, 673 So.2d 812, 814-15 (Ala. Crim. App. 1995) (footnote omitted)."
93 So.3d at 1012-13 (footnote omitted).
Here, Stoves's convictions for one count of reckless manslaughter and five counts of felony murder are based on the murders of the same five victims arising from the same incident. Stoves was convicted of one count of reckless manslaughter that encompasses the deaths of all five victims, and he was also convicted of five separate counts of felony murder pertaining to each of the five victims. Thus, Stoves was subjected to double jeopardy by being twice convicted for the same offenses. Accordingly, we remand this case to the circuit court with instructions that the court vacate Stoves's manslaughter conviction and accompanying sentence.
II.
Stoves contends that the circuit court erred when it denied his motion to suppress his statement to law enforcement because, he says, he did not give the statement knowingly, voluntarily, or intelligently. Specifically, Stoves claims that he "labored under the mistaken belief that he was going to receive some sort of beneficial treatment from the police or prosecutors in exchange for his statement." (Stoves's brief, p. 16.)
Stoves's suppression argument fails to comply with Rule 28(a)(10), Ala. R. App. P., and, therefore, is deemed waived. See Hooks v. State, 141 So.3d 1119 (Ala. Crim. App. 2013). Rule 28(a)(10), Ala. R. App. P. provides, in relevant part, that appellate briefs must include "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." This Court has previously stated that
" ' "[r]ecitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed." Hamm v. State, 913 So.2d 460, 486 (Ala. Crim. App. 2002). "An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument." Ex parte Riley, 464 So.2d 92, 94 (Ala. 1985) (citations omitted). "When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research."
*689 City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998).' "
Taylor v. State, 157 So.3d 131, 143 (Ala. Crim. App. 2010) (quoting Scott v. State, --- So. 3d ----, ---- (Ala. Crim. App. 2010),rev'd on other grounds by Ex parte Scott, --- So. 3d ---- (Ala. 2011) ).
" '[A]pplication of Rule 28(a)(10) to find a waiver of arguments in an appellate brief has been limited to those cases in which the appellant presents general assertions and propositions of law with few or no citations to relevant legal authority, resulting in an argument consisting of undelineated general propositions unsupported by sufficient legal authority or argument. Although Rule 28(a)(10) is to be cautiously applied, it has been applied recently by the Alabama Supreme Court and by this Court when appropriate. ...' "
McWhorter v. State, 142 So.3d 1195, 1236 (Ala. Crim. App. 2011).
Here, Stoves does not cite the portion of the record that contains the substantive matter he attempts to present in this claim. Although he does quote extensive legal authority regarding the standard of review applied to the admissibility of inculpatory statements to law enforcement, he fails to delineate his argument and only presents the general assertion that he was promised leniency in exchange for providing a statement to police. Accordingly, Stoves's claim is deemed waived, and he is not entitled to relief on this issue.
III.
Stoves contends that the circuit court erred when it denied his motion for a judgment of acquittal with respect to his felony-murder charges because, he says, the State's evidence was insufficient to sustain those convictions. Specifically, Stoves argues that the State failed to show that he had the intent to rob each of the victims.
Initially, we address the State's claim that Stoves failed to preserve his sufficiency claim for appellate review. As noted above, Stoves filed a motion for a new trial arguing that "[t]he evidence presented at trial was insufficient to find [him] guilty beyond a reasonable doubt." The State cites T.J.J. v. State, 716 So.2d 258, 260 (Ala. Crim. App. 1998), for the proposition that " '[a] defendant's motion for new trial, in which he asserts that the state failed to present sufficient evidence to sustain the verdict, is required to specifically point out where in the evidence is contended to be deficient.' " (quoting Johnson v. State, 500 So.2d 69, 72 (Ala. Crim. App. 1986) ).
This Court has held:
"It is well settled that
" '[t]he issue of the sufficiency of the evidence is preserved for review by a defendant's motion for a judgment of acquittal that is entered at the end of the state's case, at the close of the evidence, see [Ala. R. Crim. P.] 20.1(a), or after the verdict is entered, see [Ala. R. Crim. P.] 20.3. The motion must state the ground that the state failed to prove a prima facie case [or similar language]. See, e.g., Ex parte Maxwell, 439 So.2d 715 (Ala. 1983). A defendant may also challenge the sufficiency of the evidence when moving for a new trial under [Ala. Crim. P.] 24.1 or when moving for an arrest of judgment under [Ala. R. Crim. P.] 24.2. [Ala. R. Crim. P.] 20.3(c) ; see Pearson[ v. State], 601 So.2d [1119] , 1123-24 [ (Ala. Crim. App. 1992) ] ; Prather v. City of Hoover, 585 So.2d 257, 258 n.1 (Ala. Cr. App. 1991).'
" Zumbado v. State, 615 So.2d [1223,] 1241 [ (Ala. Crim. App. 1993) ]. Further,
" '[t]he sufficiency of the evidence is subject to appellate review only where *690 the defendant challenges the State's lack of evidence by either a motion to exclude, a motion for judgment of acquittal, or a motion for a new trial. Slaughter v. State, 424 So.2d 1365 (Ala. Cr. App. 1982) ; see Johnson v. State, 500 So.2d 69 (Ala. Cr. App. 1986). ...' "
Davis v. State, 42 So.3d 162, 167 (Ala. Crim. App. 2009).
In Ex parte McNish, 878 So.2d 1199 (Ala. 2003), the Supreme Court of Alabama addressed a substantially similar issue:
"At the close of all the evidence, Rosalyn filed in open court a written motion for a judgment of acquittal stating, 'as grounds for said motion would show unto the court the evidence is insufficient to support a finding of guilt beyond a reasonable doubt to the charged offenses.' ...
"The Court of Criminal Appeals held that Rosalyn had not preserved for appellate review her challenge to the sufficiency of the evidence to support her convictions. [ McNish v. State, 878 So.2d 1189 (Ala. Crim. App. 2000) ] ...
" '...'
"In Ex parte Hall, 843 So.2d 746 (Ala. 2002), this Court addressed a virtually identical preservation issue:
" 'In his written motion for a judgment of acquittal, Hall stated as one of his grounds that "insufficient evidence has been presented to support a finding that the defendant is guilty beyond a reasonable doubt." The statement is almost identical to the statement in Hanson[ v. City of Trussville, 539 So.2d 1082 (Ala. Crim. App. 1988) ], that the city had not "proven that [the defendant] is guilty of driving while suspended or revoked through the evidence." Thus, although Hall's statement here, like the statement in Hanson, is not as perfectly phrased as the statement this Court endorsed in Ex parte Maxwell, [439 So.2d 715, 716 (Ala. 1983), i.e., "the prosecution has failed to make a prima facie case"], it was nevertheless "sufficient ... to put the trial court on notice of a defect in the city's case, and, therefore, sufficient to preserve the issue for review." Hanson, 539 So.2d at 1084.'
" 843 So.2d at 749. ..."
878 So.2d at 1200-01. Accordingly, Stoves has preserved this issue for appellate review, and we address the merits of his claim.
" ' "In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution." ' Ballenger v. State, 720 So.2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). ' "The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt." ' Nunn v. State, 697 So.2d 497, 498 (Ala. Crim. App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala. Crim. App. 1992). ' "When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision." ' Farrior v. State, 728 So.2d 691, 696 (Ala. Crim. App. 1998) (quoting Ward v. State, 557 So.2d 848, 850 (Ala. Crim. App. 1990) ). 'The role of appellate courts is not to say what the facts are. Our role *691 ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978)."
Wilson v. State, 142 So.3d 732, 809 (Ala. Crim. App. 2010).
"In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974) ; United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971) ; Clark v. United States, 293 F.2d 445 (5th Cir. 1961).
" '[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969) ; Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967) :
" ' "Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140 ; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words,
" ' " '... the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude.' Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied)."
" 'The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.' McGlamory, 441 F.2d at 135 and 136."
Cumbo v. State, 368 So.2d 871, 874-75 (Ala. Crim. App. 1978).
" 'Intent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' " Seaton v. State, 645 So.2d 341, 343 (Ala. Crim. App. 1994) (quoting McCord v. State, 501 So.2d 520, 528-29 (Ala. Crim. App. 1986) ). Intent " ' "may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." ' " Farrior v. State, 728 So.2d 691, 695 (Ala. Crim. App. 1998) (quoting Jones v. State, 591 So.2d 569, 574 (Ala. Crim. App. 1991), quoting in turn Johnson v. State, 390 So.2d 1160, 1167 (Ala. Crim. App. 1980) ). " 'The intent of a defendant at the time of the offense is a jury question.' " C.G. v. State, 841 So.2d 281, 291 (Ala. Crim. App. 2001), aff'd, 841 So.2d 292 (Ala. 2002) (quoting *692 Downing v. State, 620 So.2d 983, 985 (Ala. Crim. App. 1993) ).
" Section 13A-2-23(2), Ala. Code 1975, provides that '[a] person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense ... [h]e aids or abets such other person in committing the offense.' '[I]n Alabama, an individual who is present with the intent to aid and abet in the commission of an offense is as guilty as the princip[al] wrongdoer.' Price v. State, 725 So.2d 1003, 1055 (Ala. Crim. App. 1997), aff'd, 725 So.2d 1063 (Ala. 1998). 'The words "aid and abet" encompass all assistance by acts, words of encouragement, or support, or presence, actual or constructive, to render assistance should it become necessary.' Henry v. State, 555 So.2d 768, 769 (Ala. Crim. App. 1989). 'The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved. Rather, the jury must examine the conduct of the parties and the testimony as to the surrounding circumstances to determine its existence.' Miller v. State, 405 So.2d 41, 46 (Ala. Crim. App. 1981) (citation omitted). 'The jury is to determine whether the appellant's participation exists and the extent of it from the conduct of the parties and all the testimony presented.' Walls v. State, 378 So.2d 1186, 1191 (Ala. Crim. App. 1979). 'Such facts as the defendant's presence in connection with his companionship, his conduct at, before, and after the commission of the act, are potent circumstances from which participation may be inferred.' Sanders v. State, 423 So.2d 348, 351 (Ala. Crim. App. 1982)."
Harris v. State, 854 So.2d 145, 151 (Ala. Crim. App. 2002).
Section 13A-6-2(a)(3), Ala. Code 1975, states that
"[a] person commits the crime of murder if ... [h]e or she commits or attempts to commit ... robbery in any degree ... and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of that person."
"A person commits the crime of robbery in the first degree if he violates Section 13A-8-43[, Ala. Code 1975,] and he ... [i]s armed with a deadly weapon or dangerous instrument." § 13A-8-41(a), Ala. Code 1975. Section 13A-8-43, Ala. Code 1975, provides that "[a] person commits the crime of robbery in the third degree if in the course of committing a theft he ... [u]ses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance."
The State's evidence was sufficient to sustain Stoves's five convictions for felony murder committed during the course of a robbery. Williams testified that, on January 28, 2012, Stoves used a pistol and Mims used a revolver to take his 9-millimeter Smith & Wesson and his holster, among other items. Antarius and Scott testified that they arrived at the house on Avenue S around 3 a.m. on January 29, 2012, to find all the lights on and the front door open. When Antarius attempted to enter the house, he heard someone ransacking the house and was met with Stoves pointing a "Ruger nine with an extended clip" at him. As Antarius ran away, he saw three people leave the house and saw two of them approach Sanford's vehicle. Stoves approached the driver's side of Sanford's vehicle holding a 9-millimeter pistol with an extended clip. Mims also had a gun and pulled Scott out *693 of the car and forced him to lie face down on the ground. Scott heard Stoves tell Sanford to "give it up" and then heard a gunshot. The third person who had left returned and asked Stoves what he had shot Sanford with. The three men then left in Sanford's car, which was later discovered completely burned. Scott had several items including money, jewelry, and his cellular telephone taken from him while he was at the house on Avenue S. Antarius and Scott each reported the robbery, and, as a result of their interviews, police developed Stoves, Mims, and Underwood as suspects.
Four police officers responded to the house on Avenue S to find the house ransacked. The officers discovered five victims of gunshot wounds, who were later identified as Charles Render, Ronnie Render, Jeffrey Davis, Jonathan Sanchez, and Demetrius Sanford. Dr. Simmons testified that each victim died as a result of the gunshot wounds he suffered. Rector testified that a 9-millimeter Smith & Wesson was one of the three types of guns used in the crimes. Items belonging to Ronnie and Scott were later discovered at a convenience store located two blocks from Mims's residence, and Charles's wallet was discovered at a McDonald's fast-food restaurant. Stoves admitted to police that he had been at the house on Avenue S with Mims and Underwood and that they left in Sanford's vehicle.
Accepting as true all evidence introduced by the State, according the State all legitimate inferences therefrom, and considering all evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence to sustain Stoves's five convictions for committing a murder during the course of a robbery. Accordingly, Stoves's claim is without merit, and he is not entitled to relief on this issue.
Based on the foregoing, the judgment of the trial court with respect to Stoves's five felony-murder convictions is affirmed. Further, we remand this case to the circuit court with instructions that the court vacate Stoves's manslaughter conviction and accompanying sentence. The circuit court is directed to make a return to this Court showing compliance with these instructions no later than 42 days from the date of this opinion.
AFFIRMED IN PART; AND REMANDED WITH INSTRUCTIONS.*
Windom, P.J., and Welch, Kellum, and Burke, JJ., concur.

Stoves was indicted for murder made capital pursuant to § 13A-5-40(a)(10), Ala. Code 1975 ("[m]urder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct"), and was convicted of the lesser-included offense of reckless manslaughter.

Stoves was indicted for five counts of murder made capital pursuant to § 13A-5-40(a)(2), Ala. Code 1975 ("[m]urder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant"); for each count, he was found guilty of the lesser-included offense of felony murder.

Note from the reporter of decisions: On May 26, 2017, on return to remand, the Court of Criminal Appeals affirmed, without opinion.